## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**WILLIE WILSON,**

     **Plaintiff,**

**vs.**                      **Case No. 1:17cv283-MW/CAS**

**NANCY A. BERRYHILL,**
**Acting Commissioner of Social**
**Security,**

     **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned magistrate

judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C.

§ 405(g) for review of the final determination of the Acting Commissioner

(Commissioner) of the Social Security Administration (SSA) denying

Plaintiff's application for Supplemental Security Income (SSI) filed pursuant

to Title XVI of the Act and an application for a period of disability and

Disability Income Benefits (DIB) filed pursuant to Title II of the Social

Security Act.  After consideration of the entire record, it is recommended

that the decision of the Commissioner be affirmed.

## I. Procedural History

On August 4, 2014, and May 28, 2015, Plaintiff, Willie Wilson, filed

applications for DIB and SSI, respectively, alleging disability beginning April

2, 2014, based back problems, paralysis of left leg, high blood pressure,

and obesity. Tr. 17, 172-76, 203.[1]  Plaintiff last met the insured status

requirements for DIB on December 31, 2019.  Tr. 17; *but see* Tr. 199 (Dec.

31, 2018).

Plaintiff's applications were denied initially on September 25, 2014,

and upon reconsideration on December 9, 2014.  Tr. 17, 94-104, 109-13.

On December 22, 2014, Plaintiff requested a hearing.  Tr. 17, 114-16.  On

October 18, 2016, Administrative Law Judge (ALJ) Emily Ruth Statum

conducted a video hearing from Orlando, Florida, and Plaintiff appeared

and testified in Ocala, Florida.  Tr. 17, 32-63.  Plaintiff was represented by

Gary L. Fernandes, Jr., an attorney.  Tr. 17, 34.  Barbara H. Moses, an

impartial vocational expert, testified during the hearing.  Tr. 17, 53-62, 332-

34 (Resume).

On December 20, 2016, the ALJ issued a partially favorable decision

and denied Plaintiff's applications for benefits concluding that Plaintiff was

---

[1]  Citations to the transcript/administrative record, ECF No. 9, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

not disabled prior to September 10, 2016, but became disabled on that date and has continued to be disabled to the date of the decision.  Tr. 25.

On February 15, 2017, Plaintiff requested review of the ALJ's decision.  Tr. 170-71.  On March 9, 2017, the Appeals Council granted Plaintiff additional time to provide the Appeals Council with additional information.  Tr. 7.  Plaintiff provided the Appeals Council with a brief dated April 3, 2017.  Tr. 4-5, 342-47 (Exhibit 24E).  On September 13, 2017, the Appeals Council denied Plaintiff's request for review.  Tr. 1-6.

On November 13, 2017, Plaintiff, by counsel, filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 14 and 17, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1. "The claimant meets the insured status requirements of the Social Security Act through December 31, 2019."  Tr. 19.

2. "The claimant has not engaged in substantial gainful activity since the alleged onset date."  *Id.*

3. "Since the alleged onset date of disability, April 2, 2014, the claimant has had the following severe impairments: degenerative changes at L4-5 and L5-S1, status post left L4-5 and L5-S1 facetomies, left L5 laminectomy, a posterolateral fusion at L4, L5, and S1, post laminectomy syndrome, left lower extremity radicular pain and weakness, segmental spinal

instrumentation of L4, L5 and S1, obesity, and radiculopathy." *Id.* The ALJ also considered Plaintiff's affective disorder and found this non-severe resulting in *mild* restriction of activities of daily living; *mild* difficulties in maintaining social functioning; *mild* difficulties in maintaining concentration, persistence or pace; and *no* repeated episodes of decompensation, each of extended duration. Tr. 20.

4. "Since the alleged onset date of disability, April 2, 2014, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 20. The ALJ determined that the severity of Plaintiff's degenerative disc disease did not meet Listing 1.04 as "there is no evidence of nerve root compression, spinal arachnoiditis, or stenosis resulting in pseudo claudication." *Id.* The ALJ also considered the effects of Plaintiff's obesity "to determine if there are other musculoskeletal, respiratory, cardiovascular impairments that could be evaluated under Listings 1.00Q, 3.00I, and 4.00F to determine the combined effect of these impairments with obesity" pursuant to Social Security Ruling 02-1p. The ALJ "found that obesity did not increase the severity of the coexisting or related impairments to the extent that combination of impairments meet the requirements of a listing."[2] *Id.*

5. "[S]ince April 2, 2014, the claimant has the residual functional capacity (RFC) to perform sedentary work as follows: the claimant

---

[2] Social Security Ruling 02-01p, 2002 SSR LEXIS 1 (Sept. 12, 2002) stands for the proposition that because a claimant's weight fell within the applicable definition of obesity, obesity should be considered, among other impairments, because it can cause further degradation of a claimant's physical capacity, especially in the presence of certain impairments. *Id.* According to SSR 02-01p, "[t]he Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40. These levels describe the extent of obesity, but they do not correlate with any specific degree of functional loss." 2002 SSR LEXIS 1, at *4-5. Plaintiff's BMI "of over 41.63kg/m2," Tr. 22, would place him in the Level III category. *Id.* "Because there is no listing for obesity, [the Social Security Administration] will find that an individual with obesity 'meets' the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of the listing." 2002 SSR LEXIS 1, at *12-13.

can lift or carry 8 pounds, occasionally, sit up to 7 hours in an 8 hour workday, stand or walk an hour in an 8 hour workday with the need for a cane for balancing, standing, or walking and with the need to change positions during the day from sitting to standing every 20 minutes at will, pushing or pulling no more than 8 pounds, occasionally, occasionally climbing ramps or stairs, no climbing ladders, ropes or scaffolds, occasionally stooping, kneeling, crouching or crouching and with the need for simple routine work.  Tr. 20.

6.  "Since April 2, 2014, the claimant is unable to perform any past relevant work."  Tr.  23.  The vocational expert classified Plaintiff's past relevant work as a respiratory therapist, medium exertion, with an SVP of 6 or skilled work.  *Id.*  Based on Plaintiff's RFC for sedentary work, the ALJ determined that the demands of his past relevant work exceeded his past relevant work.  *Id.*

7.  "Prior to the established disability onset date, the claimant was a younger individual age 45-49."  *See* 20 C.F.R. § 404.1563(c) (age 45-49). (Plaintiff was approximately 47 ½ on April 2, 2014.)  "On September 10, 2016, the claimant's age category changed to an individual closely approaching advanced age."  *Id.*; *see* 20 C.F.R. § 404.1563(d) (age 50-54).  "The claimant has at least a high school education and is able to communicate in English." Tr. 23.

8.  "Prior to September 10, 2016, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules [the Grids] as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills.  Beginning on September 10, 2016, the claimant has not been able to transfer job skills to other occupations."  *Id.*  "The vocational expert testified that the claimant has not acquired any work skills that would transfer to other jobs within the claimant's [RFC]."  *Id.*

9.  "Prior to September 10, 2016, the date the claimant's age category changed, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed."  *Id.*  The ALJ noted that prior to September 10, 2016,

if Plaintiff had the RFC to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21.  Tr. 24.  In order to determine the extent to which Plaintiff's limitations eroded the unskilled sedentary occupational base, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC.  The vocational expert opined that such a person could perform several representative occupations such as call out operator, document preparer, and laminator, each with a sedentary exertion, unskilled work with an SVP of 2.[3]  Tr. 24.

10.    "Beginning on September 10, 2016, the date the claimant's age category change, considering the claimant's age, education, work experience, and [RFC], there are no jobs that exist in significant numbers in the national economy that the claimant could perform."  Tr. 25.  The ALJ determined that "a finding of 'disabled' is reached by direct application of Medical-Vocational Rule 201.14."  *Id*.

11.    "The claimant was not disabled prior to September 10, 2016, but became disabled on that date and has continued to be disabled through the date of this decision."  *Id*.

---

[3]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 1 means "short demonstration only."  Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id*.  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id*.  Unskilled work corresponds to an SVP of 1 and 2.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledges, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[4]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2)

---

[4]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" <u>Bloodsworth</u>, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1505(a), 404.1509 (duration requirement).[5]

Both the "impairment" and the "inability" must be expected to last not less than 12 months. <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the

---

[5] The relevant DIB and SSI regulations are virtually identical. As a result, citations will be made to the DIB regulations found at 20 C.F.R. §§ 404.1500-404.1599, unless a SSI regulation provides otherwise. The parallel regulations are found at 20 C.F.R. §§ 416.900-416.999, corresponding to the last two digits of the DIB citations, e.g., 20 C.F.R. § 404.1563(c) corresponds to 20 C.F.R. § 416.963(c).

expiration of his insured status.  *See* 42 U.S.C. § 423(a)(1)(A); Moore v.

Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845

F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health &

Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past relevant work?[6]

---

[6]  An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  *Id.*  Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 4041546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2, 1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity assessment" describes an adjudicator's finding about the ability of an individual to perform work-related activities.  The assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect when the ALJ rendered her decision.  *See generally* Bagliere v. Colvin, No. 1**:**16CV109, 2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S. Dist. LEXIS 51917

5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g). An ALJ may make this determination either by applying the grids or by obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-40; see 20 C.F.R. pt. 404, subpt. p, app. 2.  If the Commissioner carries

_____

(M.D. N.C. Feb. 23, 2017).

this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  <u>Hale v. Bowen</u>, 831 F.2d 1007, 1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim. *See* 20 C.F.R. § 404.1512(a); <u>Moore</u>, 405 F.3d at 1211.

## IV.  Legal Analysis

**Substantial evidence supports the ALJ's determination that Plaintiff was not disabled prior to September 10, 2016, but became disabled on that date through the date of the ALJ's decision.**

A.

Plaintiff argues the ALJ erred in mechanically applying the Medical-Vocational Guidelines (the Grids) to Plaintiff.  ECF No. 14 at 5-13.  For the most part, Plaintiff provides a generalized argument, but sums up his position:

> In this case, Plaintiff Wilson's age was mechanical (sic) applied to find him disabled as of his 50th birthday, but not before.  This was done despite the additional factors of Plaintiff's obesity: 6'3" tall weight 310 pounds, (TR 42), partial paralysis of the left leg, his need to use a cane to stand and walk and his incontinence (TR 39-49).

*Id.* at 12-13.[7]  Plaintiff requests, in part, that the case be reversed and remanded for a supplemental hearing "to reconsider whether [the Grids] were mechanically applied at age 50.; (sic) and whether substantial evidence supports a RFC for sedentary work."  *Id.* at 13.  Aside from briefly referring to the opinion of treating physician, Sagun Tuli, M.D., and the opinion of a residual functional capacity doctor, Gerald Stein, ECF No. 14 at 4, Plaintiff has not provided a legal basis for reversing the latter RFC issue.  ECF No. 14 at 5-13.  Plaintiff requests disability benefits from April 2, 2014, until September 10, 2016.

B.

The regulations divide claimants into several age categories and relevant here: "younger person" (under age 50 or 45 to 49 in some cases) and a "person closely approaching advanced age" (age 50 to 54).  20 C.F.R. § 404.1563(c)-(d).  The classification of a person's age can be important because, in general, the higher the age category, the more

---

[7]  Plaintiff cryptically alleges the ALJ's RFC assessment does not account for his obesity in combination with her other symptoms.  ECF No. 14 at 12-13.  The ALJ identified obesity as a severe impairment and expressly referred to SSR 02-01p, 2002 SSR LEXIS 1 (2002) and one of Plaintiff's "precipitating and aggravating factors." Tr. 20, 22.  In particular, the ALJ noted Plaintiff's obesity and accounted for same in the RFC assessment.  Tr. 22.  The ALJ considered Plaintiff's obesity and no error has been shown.  *See* Lewis v. Comm'r of Soc. Sec., 487 F. App'x 481, 483 (11th Cir. 2012) (unpublished).

lenient the standard for proving a disability. *See* SSR 83-10, 1983 SSR LEXIS 30, at *20 (1983). For example, if the claimant is under age 50, the SSA generally does "not consider that [the claimant's] age will seriously affect [their] ability to adjust to other work. However, in some circumstances, [the SSA] consider[s] that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. *See* Rule 201.17 in appendix 2." Further,

> [t]he regulations provide that older age is an increasingly adverse vocational factor for persons with severe impairments. The chronological ages 45, 50, 55 and 60 may be critical to a decision. However, the regulations also provide that age categories are not applied *mechanically in borderline situations*.[8] For example, a rule for an individual of advanced age (55 or older) could be found applicable, in some circumstances, to an individual whose chronological age is 54 years and 11 months (closely approaching advanced age). No fixed guidelines as to when a borderline situation exists are provided since such guidelines would themselves reflect a mechanical approach.

SSR 83-10, 1983 SSR LEXIS 30, at *20 (emphasis added); *see* 20 C.F.R. § 404.1563(b).

The ALJ stated that *prior* to his established disability onset date (April 4, 2014), Plaintiff was a younger individual age 45-49 or 47 1/2. Tr. 23; *see* 20 C.F.R. § 404.1563(c). The ALJ noted that on September 10, 2016,

---

[8]  There are many cases discussing what is or is not a "borderline age situation." *See generally* Pettway v. Astrue, No. CA 10-127-C, 2010 U.S. Dist. LEXIS 101693, at *11-13 (S.D. Ala. Sept. 27, 2010) (canvassing cases from across the nation which address when an age should be considered borderline).

Plaintiff's age category changed to an individual closely approaching

advanced age, 20 C.F.R. § 404.1563(d), and Plaintiff was over 50 years old

as of the date of the ALJ's decision on December 20, 2016.  Tr. 23.

The ALJ determined that Plaintiff has the RFC to perform sedentary

work subject to limitations.  Tr. 20; *see supra* at 4-5.  The ALJ considered

the relevant medical evidence and other evidence including Plaintiff hearing

testimony.  Plaintiff does not suggest the ALJ overlooked any material

evidence.

> At the hearing, the claimant alleged severe pain, he rated as a 7
> or an 8, that requires the claimant to change positions.  He
> indicated that he experiences leg numbness 3 to 4 times per day,
> as well as falls because his knee buckles.  He alleged
> incontinence and indicated that the best way of improving pain is
> to lie down.  The claimant indicated that he had a cane for
> walking, standing or balancing since April 2, 2014.   The claimant
> was receiving treatment with TENS unit, injections, nerve blocks,
> medication and 3 surgeries.  The claimant indicated that he is 6
> feet 3 inches tall and weighs 310 pounds.  He asserted that pain
> wakes him up at night and that he sleeps on a good night 4 to 5
> hours.  The claimant alleged that he uses a chair to shower, and
> that he has problems dressing.  He indicated that he has been on
> short term disability for about 6 months.
>
> Claimant's medical history reveals lumbar surgeries, with
> continued complaints of pain, numbness, and tingling in the left
> lower extremity.  The most recent surgeries were in May of
> 2014 for bilateral fusion and revision, and in June of 2014 due
> to fluid collection.  The claimant also reported that he
> attempted physical therapy, epidural injections and narcotic
> medications 2 years ago with poor success.  However, recent
> records show that he has been managing his pain with
> Naproxen.  A physical examination at UF Health noted normal

5/5 strength in all tested muscle groups with no muscle wasting or atrophy and normal strength and tone in extremities, except the left lower extremity with extension and flexion weakness (Exhibit 19F, p.4). Medical consultant Dr. Gupta noted in an assessment from May of 2016 that the claimant has significant weakness in left leg, but should be able to walk short distances using an ankle brace (Exhibit 18F, p[.]1). In support of his assessment, Dr. Gupta referenced to the claimant's statement from October of 2014, wherein he endorsed an ability for shopping in stores for 30 minutes, and walk for about 15 yards (Exhibit 16F, p.6). Similarly, the Life Care Center rehabilitation records from July of 2014, shows that the claimant was doing well. He was able to walk longer distances than before. According to the claimant he sleeping better and was moving better, even though he was still under some pain (Exhibit 3F, p.21). Therefore, a residual functional capacity for sedentary work as described above fully addresses all of claimant's impairments.

Records show a history of obesity with a body mass index (BMI) of over 41.63kg/m2. The claimant's height and weight was 73 inches and 342 pounds, respectively (Exhibit 12F, p.3). The treatment notes document obesity in conjunction with the claimant's other comorbidities. In view of Social Security Ruling 02-1p, the evidence shows the claimant's obesity and accompanying co-morbidities could cause some limitation in his ability to perform the physical requirements of work and thus, postural limitations and a sit stand option as well as reduced standing and walking were added to the residual functional capacity. Moreover, the use of the cane was added to the residual functional capacity.

However, after careful consideration of the evidence, the undersigned finds that claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the extent of claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision.

As for the opinion evidence, limited weight is given to Dr. Kim Loc Lee, the State agency consultant (Exhibit 4A) as he found an ability for light work with standing or walking 2 hours and postural limitations, but additional evidence received into the record reveals that a residual functional capacity for sedentary work as defined above is more consistent with claimant's impairments.

Dr. Gerald Stein issued medical source statement on August of 2015 in which he opined that the claimant only had bad days, could not lift even 10 pounds, sit or stand 5 minutes (Ex. 17F and 22F, 13F). The undersigned granted little weight to this statement as it is conclusory and based on subjective complaints.

Dr. Sagun Tali, another provider opined that claimant could not return to work because he would be a safety risk to him (Exhibit 11F, p.2). The undersigned notes that this opinion is also speculative, unsupported and based on subjective complaints.

The undersigned also considered the opinion provided by Dr. Gupta. He opined that the claimant could lifting and carrying 20 pounds, occasionally and 10 pounds, frequently, stand or walk at least 2 hours with the use of a medically required hand held assistive device for ambulation, occasionally climb ramps or stairs, occasionally balance, stoop, kneel, crouch, or crawl with no climbing of ladders, ropes or scaffolds, and avoiding even moderate exposure to hazards (machinery or heights) (Ex. 16F). Limited weight to this opinion in view of combined effect of impairments that seem more consistent with sedentary work as defined above. However, Dr. Gupta's opinion that the claimant should be able to walk short distances with use of AFO (Ankle Foot Orthosis) is given great weight in view of the surgeries and claimant's alleged symptoms and functional limitations.

The undersigned also considered the third party function report submitted by the claimant's mother, Betty Welch. Mrs. Welch indicated that the claimant uses a cane and engages in limited daily activities (Ex. 11E). The undersigned afforded this statement great weight particularly because of the use of an assistance device for safety (Exhibit 11E).

Based on the foregoing, the undersigned finds the claimant has the above residual functional capacity assessment, which is supported by objective evidence and longitudinal treatment history.

Tr. 21-23.

C.

The Grids provide a narrative explanation for those individuals who

have the RFC and the maximum sustained work capability limited to

sedentary work as a result of severe medically determinable impairment(s).

20 C.F.R. Pt. 404, subpt. P, app. 2, table No. 1, § 201.00(a)-(d).

The term younger individual is used to denote an individual age 18 through 49.  For individuals who are age 45-49, age is a less advantageous factor for making an adjustment to other work than for those who are age 18-44.  Accordingly, a finding of "disabled" is warranted for individuals age 45-49 who:

    (i)    Are restricted to sedentary work,
    (ii)   Are unskilled or have no transferable skills,
    (iii)  Have no past relevant work or can no longer perform past relevant work, and
    (iv)  Are unable to communicate in English, or are able to speak and understand English but are unable to read or write English.

20 C.F.R. Pt. 404, subpt. P, app. 2, table No. 1, § 201.00(h)(1).  Further,

a decision of "disabled" may be appropriate for some individuals under age 45 (or individuals age 45-49 for whom rule 201.17 does not direct a decision of disabled) do not have the ability to perform a full range of sedentary work.  However, the inability to perform a full range of sedentary work does not necessarily equate with a finding of "disabled."  Whether an individual will be able to make an adjustment to other work requires an adjudicative assessment of factors such as

the type and extent of the individuals limitations or restrictions and the extent of the erosion of the occupational base.  It requires an individualized determination that considers the impact of limitations or restrictions on the number of sedentary, unskilled occupations for the total number of jobs to which the individual may be able to adjust, considering his or her age, education and work experience, including any transferable skills or education providing for direct entry into skilled work.

*Id.* at § 201.00(h)(3).

At step 4 of the sequential evaluation process, the ALJ determined that since April 2, 2014, Plaintiff has been unable to perform any past relevant work as a respiratory therapist.  Tr. 23, 53-54.  At step 5, the ALJ noted that prior to September 10, 2016, if Plaintiff "had the [RFC] to perform the full range sedentary work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 201.21," for a younger individual, age 45-49, *see id.* at table No.1.  Tr. 24; *see also* Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999).  The ALJ noted, however, that Plaintiff's "ability to perform all or substantially all of the requirements of this level work was impeded by additional limitations," and, accordingly, asked the vocational expert to determine the extent to which these limitations eroded the unskilled sedentary occupational base based on the criteria stated above.  Tr. 24.

The ALJ advised the vocational expert of Plaintiff's age ("47 to 49 year (sic) old," Tr. 54) along with other factors when posing a hypothetical

question to determine if Plaintiff could perform his past relevant work and

the vocational expert opined he could not.  Tr. 53-54.  Based on the same

hypothetical question, the vocational expert opined Plaintiff could perform

other representative jobs in the national economy such as call out operator,

document preparer, and laminator, all sedentary exertion, unskilled with an

SVP of 2.  Tr. 54; *see supra* at 6 n.3.

The ALJ advised the vocational expert that Plaintiff reached 50 years

of age on September 10, 2016.[9]  Tr. 55.  The vocational expert stated that

there were no transferable skills to sedentary work given the hypothetical

question posed (RFC).  *Id.*; *see generally* McShane v. Comm'r of Soc.

Sec., No. 8:15-cv-677-T-JSS, 2016 U.S. Dist. LEXIS 27855, at *16-18

(M.D. Fla. Mar. 4, 2016).  The ALJ stated that transferability of job skills

was not "material to the determination of disability because using the

Medical-Vocational Rules as a framework supports a finding that the

claimant is 'not disabled' whether or not the claimant has transferable job

skills.  Beginning on September 10, 2016, the claimant has not been able

to transfer job skills to other occupations."  Tr. 23.

---

[9]  Upon inquiry from the ALJ, Plaintiff's counsel advised that Plaintiff did not want
to amend his alleged onset date to age 50 (September 10, 2016).  Tr. 55.

In the Eleventh Circuit, a claimant can rebut an ALJ's age findings of fact by proffering substantial credible evidence that his or her ability to adapt to other work is less than the level established by the Grids for persons of the claimant's age.  Reeves v. Heckler, 734 F.2d 519 (11th Cir. 1984).  As discussed below, Plaintiff does not persuasively prove that his ability to adapt was less than that of persons of his age category, and, therefore, he has not shown that the ALJ's finding was erroneous.  Reeves, 734 F.2d at 525.

Moreover, the question of whether the claimant should have been treated as a person of closely approaching advanced age for the time period prior to September 10, 2016, is not dispositive where the ALJ does not rely exclusively on the Grids and substantial evidence supports the ALJ's determination that the claimant was not disabled.  Miller v. Comm'r of Soc. Sec. Admin., 241 F. App'x 631, 636 (11th Cir. 2007) (unpublished) (issue whether ALJ erred in treating 54-year-old as "person of advanced age" or "closely approaching advanced age" under Grids was "essentially theoretical" because ALJ did not rely exclusively on Grids in making disability determination and utilized testimony of VE).  Here, the ALJ utilized the testimony of the vocational expert, based on a hypothetical that assumed a person of Plaintiff's age, education, experience, and RFC, in

finding that Plaintiff was not disabled.  The ALJ properly used the Grids only as a framework for the decision and considered the testimony of a vocational expert to determine there was other representative work that Plaintiff could perform given his age, experience, and RFC.  Tr. 20.  No error has been shown.

Further, the vocational expert's testimony was based upon the ALJ's hypothetical question that fairly set out Plaintiff's reasonable limitations.  Tr. 54-55.  The ALJ relied on the vocational expert's testimony to find that Plaintiff could perform other work.  *See* <u>Wilson</u>, 284 F.3d at 1227.  No error has been shown.

### D.

As part of the RFC determination, *see supra* at 14-17, the ALJ considered the evaluation performed by State agency medical consultant, Kim Loc Lee, Tr. 22, 84-89 (Reconsideration, Nov. 30, 2014), who found Plaintiff had "inability for light work with standing or walking 2 hours and postural limitations."[10] Tr. 22.  The ALJ stated, however, "but additional

---

[10]  Although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a state agency medical consultant regarding the nature and severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review.  *See* SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017).  The findings of State agency medical consultant may provide additional evidence to support the ALJ's findings.  *See* <u>Jones v. Bowen</u>, 810 F.2d 1001, 1005 (11th Cir. 1986).

evidence received into the record reveals that a [RFC] for sedentary work as defined above is more consistent with the claimant's impairments."  *Id.*

The ALJ also considered Dr. Stein's medical source statement (RFC Questionnaire) of August 2015 "in which he opined that the claimant only had bad days, could not lift even 10 pounds, sit or stand 5 minutes (Ex. 17F and 22F [sic], 13F)", but "granted little weight to the statement as it is conclusory and based on subjective complaints."  Tr. 22; *see* Tr. 567-71 (Exhibit 21F).

The ALJ considered the opinion of Dr. Tali, "another provider [who] opined that claimant could not return to work because he would be a safety risk to him (Exhibit 11F, p. 2).  The undersigned notes that this opinion is also speculative, unsupported and based on subjective complaints."  Tr. 22; *see* Tr. 486 (Exhibit 11F).

The ALJ considered the opinion of Dr. Gupta, but gave his opinion limited weight "in view of combined effect of impairments that seem more consistent with sedentary work as defined above.  However, Dr. Gupta's opinion that the claimant should be able to walk short distances with the use of AFO (Ankle Foot Orthosis) is given great weight in view of the surgeries and claimants alleged symptoms and functional limitations."  Tr.  22, *see* Tr. 525-32 (Exhibit 16F, May 2, 2016).

The general rule that the opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary, is not applicable here.  *See* Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1527(c)(1)-(6) (factors to be considered).  Further, opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability."  20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986).  "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance."  SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017). Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility for assessing the claimant's RFC.  *See supra* at 9 n.6.

Nevertheless, in general, the opinions of examining physicians are given more weight than non-examining physicians, 20 C.F.R.

§ 404.1527(c)(1)-(2), and the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor.  Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam).  The ALJ complied with this standard.

Substantial evidence supports the ALJ's RFC assessment.  The ALJ properly performed the responsibility of evaluating the relevant evidence in assessing Plaintiff's RFC.  Tr. 20-23; see Ybarra v. Comm'r of Soc. Sec., 658 F. App'x 538, 543 (11th Cir. 2016) (unpublished).  No error has been shown.

## V.  Conclusion

Considering the record as a whole, the ALJ's findings are based upon substantial evidence in the record and the ALJ correctly applied the law.  Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's applications for Social Security benefits be **AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on September 14, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.